**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JOEL ANDERSON,

                                        Plaintiff,

                  - v -                                    Civ. No. 9:07-CV-1184
                                                                          (DNH/RFT)

KAREN LAPOLT, *Deputy Superintendent of Program*
*Services*; MICHAEL LEGHORN, *Captain*; B.P. BROWN,
*Correctional Sergeant*; DR. BASHVAR, *Physician*; DR. GUZMAN,
MAXINE MOE #1,

                                        Defendants.[1]

**APPEARANCES:**                                    **OF COUNSEL:**

JOEL ANDERSON
Plaintiff, *Pro se*
03-A-3649
Sullivan Correctional Facility
Box 116
Fallsburg, NY 12733

HON. ANDREW M. CUOMO                    SHOSHANAH V. BEWLAY, ESQ.
Attorney General for the State of New York    Assistant Attorney General
*Attorney for Defendants*
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

        *Pro se* Plaintiff Joel Anderson filed a civil rights action, pursuant to 42 U.S.C. § 1983,

alleging that Defendants violated his constitutional rights.   Specifically, Plaintiff brings the

following constitutional claims: (1) retaliation in violation of the First Amendment; (2) conspiracy

---

        [1] At Plaintiff's request, Defendant William D. Brown was dismissed from this action on November 21, 2008.
Dkt. No. 33 & Oral Order, dated Nov. 21, 2008.

to retaliate; (3) denial of access to the courts; (4) due process violations stemming from a Disciplinary Hearing; and (5) deliberate indifference to his health in violation of the Eighth Amendment.  Dkt. No. 25, Am. Compl. at p. 2.  Plaintiff also brings tort claims of medical malpractice and intentional infliction of emotional distress under New York law against Defendants Drs. Bashvar and Guzman.  *Id.*  Plaintiff asks for compensatory and punitive damages, as well as various forms of injunctive relief.  *Id.* at pp. 36-40.

Currently pending are Defendants' Motion to Dismiss the Amended Complaint, pursuant to FED. R. CIV. P. 12(b), and Plaintiff's Cross-Motion for Default Judgment and Response in Opposition to the Defendants' Motion. Dkt. Nos. 31 & 34.  For the reasons that follow, it is recommended that the Defendants' Motion be **GRANTED in part** and **DENIED in part** and the Plaintiff's Cross-Motion be **DENIED**.

## I.  BACKGROUND

The following summary of Plaintiff's claims is derived from the Amended Complaint, which, in accordance with FED. R. CIV. P. 12(b), must be accepted as true for the purposes of deciding the Defendants' Motion.  *See infra* Part II.A.

### A.  Access to the Courts, Due Process, and Conspiracy to Retaliate

Plaintiff was transferred to Eastern Correctional Facility ("Eastern") on or about February 20, 2004, and, since that time, has been active in filing grievances, complaints, and other legal actions on behalf of himself and other inmates for whom he received authorization from prison officials to help.  Am. Compl. at ¶ 12.  Luis Andino, a blind inmate, was one of the persons Plaintiff was assisting.  Plaintiff helped Andino file a § 1983 action against several individuals including Defendant Michael Leghorn.  *Id.* at ¶ 13.  Plaintiff alleges that Andino was transferred to another

*-2-*

jail in order to hamper Andino's access to the courts and in retaliation for grievances filed by Andino, some of which were typed by Plaintiff. *Id.*

From 2005 through 2007, Plaintiff filed numerous grievances alleging that employees were hindering access to the courts for both himself and those he was assisting. *Id.* at ¶ 16. During that time, Plaintiff alleges that Defendants "knowingly conspired to retaliate against [him] by agreeing to file false misbehavior reports against [him] in the hopes of getting Plaintiff to cease assisting others." *Id.* at ¶ 17. Plaintiff also alleges that inmates he was assisting were transferred out of the facility[2] in order to reduce Plaintiff's caseload, and that "[r]egular law library officers were continuously rotated[,] keeping the whereabouts of said inmates . . . unknown to Plaintiff," thereby preventing him "from being able to forward their legal work to them through facility mail so that they could be filed with the respective Courts in [a] diligent manner." *Id.*

On August 7, 2007, while Plaintiff was working on a case in the law library on behalf of inmate Alexander DeJesus, Defendant Leghorn approached Plaintiff and questioned him about his work. *Id.* at ¶ 18. At that time, Plaintiff had in his possession legal papers belonging to Lester Ruiz, an inmate for whom Plaintiff did not yet have authorization to render legal assistance. *Id.* Leghorn confiscated Plaintiff's computer disk which contained, *inter alia*, a legal document belonging to Inmate Desroy Clarke. *Id.* Upon being frisked, two letters were found in Plaintiff's pocket that belonged to inmates Cruz[3] and David Perez, respectively. *Id.* at ¶ 19. Plaintiff's cell was subsequently searched, yielding additional legal work for several other inmates, including Nasin Ararfet and Gregg Curry. *Id.* Plaintiff alleges that he had possession of the letters and the legal

---

[2] Apart from Andino, Plaintiff does not state the names of the other inmates who were transferred out of the facility.

[3] Plaintiff does not provide inmate Cruz's full name.

documents found in his cell only because he picked them up after the inmates who were responsible for those documents unwittingly left them in various places in the correctional facility, and in the case of inmate Curry's documents, that Plaintiff was asked to carry the documents back to the housing unit for Curry, who was on his way to a facility softball game. *Id.* Plaintiff admits that he "did not have authorization to posses" the confiscated legal documents, however, he denies providing those inmates with any type of legal assistance. *Id.*

On or about August 10, 2007, Leghorn filed a Misbehavior Report against Plaintiff for violating rules against the possession of contraband and the provision of legal assistance without prior approval of the Superintendent. *Id.* at ¶ 20. The Misbehavior Report alleged that Plaintiff possessed other inmates' legal materials and was providing legal assistance in the law library in exchange for compensation. *Id.* at ¶ 21. Plaintiff was later tried at a Disciplinary Hearing that began on August 21 and ended on August 30, 2007, Defendant Karen Lapolt, Deputy Superintendent of Program Services, presiding as the Hearing Officer. *Id.* at ¶ 24. At the Hearing, Plaintiff called numerous inmate witnesses who all testified that Plaintiff had not solicited nor assisted them with their legal work. Defendant Leghorn testified that a confidential source had informed him that Plaintiff was improperly providing legal assistance to other inmates. *Id.* at ¶ 25. No evidence was presented concerning the reliability of the confidential source. In addition, Plaintiff was not allowed to read all of his case law into the record, to call an inmate witness who would have testified that Plaintiff was not working on any legal documents for inmate Ruiz while in the library, nor to introduce other documentary evidence. *Id.* at ¶ 26. Defendant Lapolt found Plaintiff guilty of providing unauthorized legal assistance and of possessing contraband, but not guilty of interference with an employee. *Id.* at ¶ 27. Plaintiff was sentenced to thirty (30) days keeplock in his cell and

loss of all privileges.  Plaintiff appealed that decision to the Director for Special Housing Units and Inmate Tier III Appeals at the New York State Department of Correctional Services ("DOCS").  *Id.* at ¶ 31.

On August 30, 2007, based on the allegedly false charges on which Plaintiff was convicted at the Disciplinary Hearing, Lapolt terminated Plaintiff's authorizations to assist other inmates with their legal claims.  *Id.* at ¶ 28.  Without Plaintiff's assistance, inmates Eli Vega, Amin Marte, and Alexander DeJesus were unable to file timely applications and motions in their respective legal actions.  *Id.* at ¶¶ 28-29.

In a separate incident, on or about August 17, 2007, Defendant B.P. Brown came into the law library and, without providing an explanation, confiscated two net bags containing Plaintiff's legal work.  *Id.* at ¶ 22.  Those bags contained legal work that belonged to Vega, for whom Plaintiff was authorized to do legal work.  Although Defendant Leghorn later returned the two bags to Plaintiff on August 22, 2007, some of the paperwork belonging to Vega was not returned.  *Id.* at ¶ 23.  Plaintiff alleges that because of said confiscation, he will be unable to complete a post-conviction brief on Vega's behalf.  *Id.* at ¶ 22.

### B.  Deliberate Indifference and Medical Malpractice

Since August 2005, Plaintiff has been a patient of Defendants Drs. Bashvar and Guzman. Am. Compl. at ¶ 34.  From September 2005 through September 29, 2008, the date the Amended Complaint was filed, Drs. Bashvar and Guzman treated Plaintiff for hypertension, back pain, shoulder pain, foot pains, and severe headaches.  *Id.* at ¶ 36.  The doctors prescribed Plaintiff diuretics for his high blood pressure that reacted negatively with Elavil, a previously prescribed chronic pain medication, causing him to suffer constant hypertension, pain behind the eyes,

numbness, irritability, nausea, vomiting, migraine headaches, shortness of breath, tightness in the chest, and adversely impacted his vision, memory, attention span, and sense of coordination. *Id.* at ¶¶ 36-38.  Also, Plaintiff believes that he may have suffered damage to his liver, kidneys, and nervous system, and that his endocrine system has a severe imbalance. *Id.* at ¶ 38.  Plaintiff alleges that Drs. Bashvar and Guzman issued him the high blood pressure medication "solely to cause [him] pain and suffering by using [him] as a guinea pig," and that their prescriptions were negligent and fell below "the standard of normal practices within the medical community." *Id.* at ¶¶ 36 & 40.  He also alleges that they issued the blood pressure medications based on "medical hunches" without first making sure that they would not react with his pain medication. *Id.* at ¶ 36.

Plaintiff was not made aware of the harmful consequences of simultaneously taking diuretics and Elavil until October 8, 2007, when an un-named facility nurse informed him that according to a medical reference book, taking Clonidine (a diuretic) together with Elavil posed dangers. *Id.* at ¶ 42.  Thereafter, Plaintiff requested to be placed on an emergency list to be seen by a doctor other than Drs. Guzman or Bashvar, but his request was denied by Guzman. *Id.* at ¶ 43.

Finally, Plaintiff alleges that after the Defendants were served with process in the instant action, Defendants Dr. Guzman and Maxine Moe #1 engaged in "fraudulently taking (in order to destroy and did destroy) [] Plaintiff's medical files . . . which showed that Plaintiff was indeed having problems with his blood[,] and the cards which recorded [] the results of Plaintiff's blood pressure readings." *Id.* at ¶ 45 (emphasis omitted).  Plaintiff alleges that such actions were taken in order to "obstruct litigation in the instant lawsuit, and or [to] otherwise thwart the future investigations that would be conducted by the Attorney General's Office as a result of this action having been filed." *Id.*

## II. MOTION TO DISMISS

### A.  Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)).  Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (emphasis added).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 753 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008).  Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009).  Therefore, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements do not suffice." *Id*. (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1950 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1949. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1950-51.

## B. First Amendment Claims

### 1. *Conspiracy to Retaliate*

Plaintiff alleges that the Defendants conspired to retaliate against him in order to prevent him from assisting other inmates with their legal claims. Defendants argue that such claims are conclusory and fail to state a valid claim.

The Second Circuit has stated that courts must approach prisoner retaliation claims "with

skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) & *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988)), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

In order to state a valid retaliation claim, a plaintiff must allege that his actions were protected by the Constitution and that such "conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citations omitted). Thus, there must be a "causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citation omitted). A plaintiff cannot state a retaliation claim in wholly conclusory terms, but rather, must provide a pleading that is "supported by specific and detailed factual allegations." *Friedl v. City of New York*, 210 F.3d 79, 85-86 (2d Cir. 2000) (citations omitted).

In this case, Plaintiff alleges that from 2005 through 2007, he "filed numerous grievances involving employee misconduct" on behalf of himself and other inmates, and that certain un-named correctional officials engaged in "continuous retaliatory conduct" against him. Am. Compl. at ¶ 16. Plaintiff further alleges that during that same period

> the Defendants knowingly conspired to retaliate against [him] by agreeing to file false misbehavior reports against [him] in hopes of getting Plaintiff to cease assisting others [in] access[ing] the Courts as well as to prevent Plaintiff from continuing to litigate and file grievances against the government officials for their misconduct and blatant violations of inmates['] civil rights.

*Id.* at ¶ 17.

In support of the above broad and conclusory accusations, Plaintiff offers details about incidents that

allegedly occurred in August 2007.

Plaintiff alleges that while working in the law library on August 7, 2007, Leghorn approached him and confiscated his computer disk which contained, *inter alia*, a legal document belonging to inmate Desroy Clarke. *Id.* at ¶ 18. Subsequent searches of Plaintiff's person and cell yielded letters and legal work that belonged to other inmates. *Id.* at ¶ 19. Plaintiff admits that he "did not have authorization to posses" the confiscated legal documents that belonged to other inmates, however, he denies providing those inmates with any type of legal assistance. *Id.*

Plaintiff claims that on August 10, 2007, Leghorn filed a retaliatory and false Misbehavior Report against him because he helped inmate Luis Andino "draft a civil action of which [Leghorn] is named as a Defendant" in the case of *Andino v. Healey et al.*, Civ. No. 9:06-CV-509 (N.D.N.Y.). *Id.* at ¶¶ 20-21. The Court takes judicial notice that Leghorn is a defendant in the lawsuit referenced above, which was commenced by Luis Andino on April 24, 2006. *Andino v. Healey et al.*, Civ. No. 9:06-CV-509, Dkt. No. 1, Compl. The Court also takes judicial notice that in a March 5, 2007 Order, wherein plaintiff Andino was directed to file an amended complaint, the Honorable David E. Peebles, United States Magistrate Judge, noted the following:

> Plaintiff has now submitted the first 88 pages of [a] 107-page pleading. Dkt. No. 13-2. Plaintiff states that the remaining pages contained claims made by inmate Joel Anderson . . . who sought to proceed as co-plaintiff in this pleading. Joel Anderson has not filed a civil rights action in this District. The Clerk is directed to send a copy of this Order to Anderson to alert him that he does not currently have a civil rights action pending in this District.

*Id.*, Dkt. No. 15, Order dated Mar. 5, 2007, at p. 3 n.6.

Plaintiff states that he and Andino intended that lawsuit to be a class-action, but "for reasons not pertinent to this complaint [Plaintiff] did not enter the action and was awaiting teleconferencing

from the Court in [] order to give evidence in that case."[4]  Am. Compl. at ¶ 13.  Thus, Plaintiff was

not a party to Andino's lawsuit, but he alleges to have assisted Andino in drafting his complaint and

was prepared to offer evidence in support of Andino's claims.

Plaintiff also describes in detail an incident that occurred on August 17, 2007:

> [A]fter conspiring with Defendant Leghorn, Defendant B.P. Brown walked in the
> facility law library and confiscated two (2) net bags containing Plaintiff's legal work.
> This was done as part and under the directive and order given to Defendant B.P.
> Brown/Sgt., by Defendant Leghorn as part of his infamous attempt to retaliate
> against Plaintiff as a form of harassment; obstructing the proper administration of
> justice and hampering inmates['] access to the Courts. . . . In the bags, there [was]
> legalwork belonging to inmate Eli Vega #96A339 who was transferred and Plaintiff
> at the time was still working on a C.P.L. § 440.10 Post Conviction Motion on behalf
> of this inmate Vega who Plaintiff had authorization to render mutual assistance to.
> As a result of the retaliation taken against Plaintiff by the party Defendants as set
> forth in this complaint, Plaintiff will be unable to complete said application on behalf
> of Mr. Vega, which would subject him to suffer legal injury.

*Id*. at ¶ 22.

Plaintiff alleges that he was called to Leghorn's office on August 22, 2007, and, after Leghorn

verbally harassed him, "Plaintiff was given his two (2) net bags of legalwork back.  However, some

of the paperwork belonging to inmate Vega [was] not returned."  *Id.* at ¶ 23.  Thus, the essence of

the above claim is that Defendants Leghorn and Brown conspired to retaliate against Plaintiff by

confiscating two bags that contained legal work he was authorized to perform on behalf of other

inmates and then returned those bags days later, but with certain unspecified materials missing.[5]

Plaintiff alleges that the Defendants conspired to retaliate against him because he provided

other inmates with legal assistance.  First, we must determine whether such conduct is protected by

---

[4] We note that a judgment was entered in the *Andino* matter on July 29, 2009.  *Andino v. Healey, et al.*, Civ. No. 9:06-CV-509 (N.D.N.Y.), Dkt. No. 141.

[5] Also imbedded in those allegations is an access to the courts claim.  We consider Plaintiff's access to the courts claims below in Part II.B.2.

the First Amendment.  In *Shaw v. Murphy*, the Supreme Court "decline[d] to cloak the provision of legal assistance with any First Amendment protection *above and beyond the protection normally accorded prisoners' speech*."  532 U.S. 223, 231 (2001) (emphasis added).  The amount of protection the First Amendment "normally accords" an inmate's speech depends on the circumstances surrounding the exercise and limitation/proscription of that speech.  *See Turner v. Safley*, 482 U.S. 78, 89-91 (1987) (holding that the prohibition of inmate-to-inmate correspondence was not an unconstitutional infringement of prisoners' First Amendment rights).  Generally though, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  Thus, a prisoner's First Amendment right to exercise free speech may be limited by any number of legitimate regulations, but the application of such limitations does not eviscerate the existence of prisoners' First Amendment rights in the first instance; a right cannot be limited if it does not exist to begin with.  *See Turner v. Safley*, 482 U.S. 48.  For that reason, we do not agree with other courts' holdings that *Shaw* stands for the proposition that "[i]nmates have no constitutional right to provide legal assistance to other inmates." *Fields v. Connecticut Dep't of Corr., et al.*, 2006 WL 1806184, at *2 (D. Conn. 2006); *see also Johnson v. Keaton*, 2008 WL 4493242, at *8-9 (M.D. Ala. Sept. 29, 2008) (citing *Shaw* for the proposition that "the First Amendment does not secure to prisoners a freestanding right to assist other inmates in legal matters," and therefore, that "such actions do not constitute an activity protected by the First Amendment"); *Van Taylor v. McSwain*, 2009 WL 1636809, at *1 (11th Cir. June 12, 2009) ("Prisoners do not have a First Amendment right to provide legal assistance to fellow prisoners."); *King v. Zamiara*, 150 Fed. Appx. 485, 492 (6th Cir. 2005) ("[A]n inmate does not have an

independent right to help other prisoners with their legal claims."). *Shaw*'s holding is not that prisoners do not have a protected right to assist each other in legal matters, rather, it is that such activity is not entitled to any *special* protection under the First Amendment. *See Auleta v. LaFrance*, 233 F. Supp. 2d 396, 399-400 (N.D.N.Y. 2002).

Here, Plaintiff alleges that he was engaged in constitutionally protected conduct when he provided other inmates with legal assistance that was authorized by prison authorities.  The First Amendment protects prisoners' speech to the extent it is not limited for legitimate penological reasons.  Taking Plaintiff's allegations as true, his speech was not limited for penological reasons; his legal assistance was authorized and became the motivation for retaliatory acts against him. Therefore, we find that Plaintiff has alleged that he was engaged in protected conduct.

Moreover, Plaintiff's allegations are sufficient to state a facially valid retaliation claim against Leghorn.  Plaintiff has alleged that he was engaged in protected conduct through his involvement and legal assistance in the *Andino* lawsuit, that Leghorn was a defendant in that lawsuit, and that Leghorn issued a false Misbehavior Report against him in retaliation for such assistance and participation.  Discovery may reveal that Leghorn's August 10, 2007 Misbehavior Report was issued for non-retaliatory reasons and, given Plaintiff's admission that he did not have authorization to possess other inmates' legal materials, such a revelation would not be surprising.  However, Plaintiff has also alleged that he was charged and convicted for violations that he did not commit, such as providing legal assistance to other inmates without permission.  Because we must accept Plaintiff's factual allegations as true, we find that he has, at a minimum, stated a plausible claim.  *See, e.g., Auleta v. LaFrance*, 233 F. Supp. 2d at 398-403 (denying motion to dismiss when plaintiff alleged he was retaliated against for providing legal advice to another inmate).

However, Plaintiff's retaliation claims against Lapolt and Brown fail the plausibility test, as does his conspiracy claims.  Plaintiff's overarching conspiracy claim appears to be that Leghorn filed the false charges against him and that Lapolt used "those false charges as a basis to retract [Plaintiff's] authorization to render inmates mutual legal assistance." Am. Compl. at ¶ 28.  Brown's role in the conspiracy was apparently limited to confiscating Plaintiff's legal work on August 17, 2007, under orders from Leghorn. *Id.* at ¶ 22.  Unlike his retaliation claim against Leghorn, Plaintiff does not proffer any plausible reason why Brown or Lapolt would have motivation to retaliate against him.  He does not allege that he assisted other inmates in filing claims against Brown or Lapolt, nor that those Defendants were aware of any such assistance.[6]  His general claim that all Defendants retaliated against him for providing legal assistance to other inmates is conclusory and implausible. *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1949 (holding that the plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully").  Thus, Plaintiff has failed to allege a causal connection between his legal assistance to other inmates and Brown's and Lapolt's alleged retaliatory acts.  Therefore, it is recommended that Plaintiff's retaliation claims against Brown and Lapolt be **dismissed**.

Furthermore, Plaintiff's claim that the Defendants conspired against him is also conclusory. Beyond Plaintiff's repeated allegation that the Defendants "conspired" against him, he pleads no facts to indicate that the Defendants agreed to act in concert with one another and, as noted above, Plaintiff has offered no plausible reason for why Brown or Lapolt would be motivated to conspire in retaliation against him. *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice.").  Therefore, it is recommended that Plaintiff's

---

[6] We take judicial notice that neither Lapolt nor Brown were defendants in the *Andino* lawsuit. *See Andino v. Healey et al.*, Civ. No. 9:06-CV-509.

*-14-*

conspiracy claim be **dismissed**.

## 2. *Access to the Courts*

To state a claim for denial of access to the courts, a plaintiff must allege that (1) the defendant acted deliberately and maliciously, and (2) the plaintiff suffered an actual injury. *Lewis v. Casey*, 518 U.S. 343, 353 (1996); *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 498 (N.D.N.Y. 2009). In this case, Plaintiff alleges to be a "self-professed advocate of prison reform and [a] paralegal." Am. Compl. at ¶ 12. Plaintiff alleges that in response to his efforts to provide assistance to other inmates, Defendants retaliated against him by filing false charges against him, prosecuting and convicting him on those charges, and ultimately revoking his authorization to assist other inmates with their legal affairs. Plaintiff alleges that by restricting and otherwise hampering his ability to assist other inmates with their legal affairs, Defendants have caused injury to those inmates and violated their right to access the courts. At no point in his Amended Complaint does Plaintiff allege that Defendants' actions deprived *him* of access to the courts, or otherwise caused *him* to suffer an actual injury with respect to any legal actions to which *he* is a party. Thus, Plaintiff has not alleged that he suffered an actual injury, a prerequisite for standing to bring an access to the courts claim. *Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001) (citing *Lewis v. Casey* for the proposition that "prisoners must demonstrate 'actual injury' in order to have standing"); *see also Monsky v. Moraghan,* 127 F. 3d 243, 247 (2d Cir. 1997) (noting that "the requirement of actual injury derives ultimately from the doctrine of standing") (citation and internal quotation marks omitted).

Notwithstanding the actual injury requirement, other courts in this district have held that prisoners may have standing to "challenge official action that prevents them from assisting other prisoners in the absence of reasonable alternatives." *Hodges v. Jones*, 873 F. Supp. 737, 745

(N.D.N.Y. 1995); *Auleta v. LaFrance*, 233 F. Supp. 2d at 398-403 ("Plaintiff has standing to argue that Defendant's actions, allegedly taken in retaliation for providing legal assistance to another inmate, were unconstitutional because they interfered with [another inmate's] right to petition for the redress of grievances.").  These rulings rely principally on the Supreme Court's decision in *Johnson v. Avery,* 393 U.S. 483 (1969).  In that case, a prisoner brought a motion that was treated as a petition for a writ of *habeas corpus*, alleging that his transfer to a maximum security prison for violating a prison regulation that proscribed inmates from assisting each other with writs and other legal matters was improper.  The Supreme Court held that the regulation barring legal assistance was invalid, stating that "unless and until the State provides some reasonable alternative to assist inmates in the preparation of petitions for post-conviction relief, it may not validly enforce [such] a regulation" because it interferes with prisoners' statutory and constitutional right to file *habeas* petitions.  393 U.S. at 490.  Although the Supreme Court did not expressly discuss the petitioner's standing in *Avery*, it is logical that his standing to bring a *habeas* petition derived not from the injuries allegedly suffered by other inmates, but from his own confinement in maximum security due to the enforcement of the prison regulation that was found to be unconstitutional.  Thus, *Johnson v. Avery* is clearly distinguishable from this case, where Plaintiff has not alleged any injury with respect to his access to the courts.[7]

Similarly, the Second Circuit's decision in *Haymes v. Montanye* is distinguishable from the case before us.  In that case, a prisoner brought a § 1983 claim alleging, *inter alia*, that he was transferred to another jail in retaliation for assisting other inmates prepare *habeas* petitions.  547 F.2d 188, 190 (2d Cir. 1976).  The Second Circuit rejected the defendants' argument that the

---

[7] Plaintiff does have standing to bring his retaliation claims because it is his allegation that *he* was retaliated against for providing legal assistance to other inmates.

plaintiff did not have standing "to vindicate the federally protected right of prisoners to petition courts for a writ of habeas corpus," holding that if the plaintiff was transferred for violating a prison regulation, "he has standing to challenge its constitutional validity *either on its face or as applied to him.*" *Id*. at 191.  In this case, Plaintiff's only personal injuries derive from the Defendants' retaliatory acts, not from the enforcement of a prison regulation against him.

Therefore, it is recommended that Plaintiff's access to the courts claims be **dismissed** for lack of standing.  *See Swift v. Tweddell*, 582 F. Supp. 2d 437, 449 (W.D.N.Y. 2008) (citing *Bass v. Singletary*, 143 F.3d 1442, 1446 (11th Cir. 1998) for the proposition that "[p]laintiffs do not have standing to assert other inmates' claims for denial of their rights of access to the courts").

Plaintiff also alleges that Defendants Guzman and Maxine Moe #1 took and destroyed Plaintiff's medical files after Guzman was served with process in the instant action "in order to obstruct the proper litigation of the instant lawsuit, and/or otherwise thwart the future investigations that would be conducted by the Attorney General's Office as a result of this action having been filed."  Am. Compl. at ¶ 45.  Defendants request dismissal of this claim on the grounds that it is conclusory.  Dkt. No. 31, Defs.' Mem. of Law at p. 19 n.6.  However, liberally read, Plaintiff has stated a facially valid access to the courts claim against Guzman and Maxine Moe #1: he alleges that they deliberately destroyed his medical files and that such action has or will prejudice the instant lawsuit.  Therefore it is recommended that Defendants' Motion be **denied** as to this claim.

Because we recommend keeping Plaintiff's claim against Defendant Maxine Moe #1, we take a brief moment to alert Plaintiff to his obligation to properly identify this Defendant.  Plaintiff is advised that the U.S. Marshals cannot effect service on a "Maxine Moe" Defendant.  In the event that Plaintiff wishes to pursue his claims against this Defendant, he shall take reasonable steps to

ascertain her identity.  Plaintiff may then file a motion to amend his Amended Complaint and seek

leave of the Court to add such individual, by name, as Defendant to this lawsuit.  Plaintiff is further

advised that if this individual is not timely served, this action will be dismissed as against her.

### C. Due Process Claims

Plaintiff alleges that his due process rights were violated during the course of a Disciplinary

Hearing that began on August 21 and concluded on August 30, 2007.  Am. Compl. at ¶ 24.

Specifically, and reading the Amended Complaint liberally, Plaintiff alleges that at the Hearing, he

was denied the opportunity to (1) read certain "case law" into the record; (2) introduce other

documentary evidence; (3) call an inmate witness; and (4) cross-examine the confidential source that

provided information against him.  *Id*.  Though Defendants assert that Plaintiff failed to exhaust his

administrative remedies with respect to his due process claims, because such claims lack merit, we

shall proceed directly thereto.  *See Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 157 (2d Cir. 1996)

(noting that "the District Court must be allowed some discretion regarding the order in which it is

to consider any question which will dispose of the litigation")

In order to state a procedural due process claim pursuant to the Fourteenth Amendment, an

inmate must first establish that he enjoys a protected liberty interest.  *Arce v. Walker*, 139 F.3d 329,

333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).  The

Supreme Court held in *Sandin v. Conner* that state created liberty interests shall be limited to those

deprivations which subject a prisoner to "atypical and significant hardship . . . in relation to the

ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Here, Plaintiff alleges that he was sentenced to and served a thirty (30) day period of

keeplock in his cell with reduced privileges, but alleges no additional aggravating circumstances

present during that confinement.  Courts in this Circuit have held that a thirty (30) day period of keeplock, absent additional egregious circumstances, is not "atypical and significant" so as to create a liberty interest and thereby trigger the protections of the Due Process Clause.  *See Rivera v. Goord,* 2008 WL 5378372, at *2-3 (N.D.N.Y. Dec. 22, 2008) (holding that forty (40) days of room restriction "did not constitute a constitutionally cognizable liberty deprivation"); *Uzzell v. Scully*, 893 F. Supp. 259, 263 (S.D.N.Y. 1995) (forty-five (45) days of keeplock is not atypical and significant), *Rivera v. Coughlin*, 1996 WL 22342, at *5 (S.D.N.Y. Jan. 22, 1996) (eighty-nine (89) days in keeplock does not create a liberty interest).  Indeed, courts have roundly rejected the notion that such a short period of confinement, without additional hardships, creates a liberty interest even when that confinement is completely segregated, such as when an inmate is sent to the Special Housing Unit ("SHU").  *See Sealey v. Giltner*, 197 F.3d 578, 589-90 (2d Cir. 1999) (101 days in normal SHU conditional was not atypical or significant) (cited in *Ochoa v. DeSimone*, 2008 WL 4517806, at *4 (N.D.N.Y. Sept. 30, 2008) (thirty (30) days in SHU, without more, did not create a liberty interest)); *Thompson v. LaClair*, 2008 WL 191212, at *3 (N.D.N.Y. Jan. 22, 2008) (thirty (30) days in SHU does not create a liberty interest).  Therefore, Plaintiff has failed to alleged his thirty-day disciplinary sentence and corresponding loss of privileges constituted an atypical and significant hardship.

We note that in addition to the thirty-day disciplinary sentence, Defendant Lapolt also terminated Plaintiff's authorization to assist other inmates with their legal claims.  Am. Compl. at ¶ 28.  In his Response to Defendants' Motion, Plaintiff asserts that his liberty interest is not derived from the time he spent in keeplock, but rather, by the fact that the Defendants have attempted to infringe upon his First Amendment right to access the courts.  Pl.'s Resp. at pp. 44-46 ("Plaintiff

Anderson's federally created liberty interests, then, [do] not rest on his right not to be confined [in] keep-lock or S.H.U. . . . rather, it rests on his right not to suffer any 'grievous loss' . . . because he exercised his federal constitutional rights.").  With respect to Plaintiff's due process claims concerning his Disciplinary Hearing, he does not allege that he was prevented access to the courts during his time in keeplock.  Thus, to the extent Plaintiff is simply re-alleging his claim that Defendants conspired to retaliate against him, or that they denied him access to the courts, those claims have already been addressed and are recommended for dismissal.  *See supra* Part II.B.2. Similarly, to the extent Plaintiff is attempting to re-allege his claim that the termination of his authority to assist other inmates impeded their ability to access the courts, those claims have also been addressed and recommended for dismissal.  *Id*.  Lastly, we reject, to the extent alleged, the notion that Plaintiff has a liberty interest in maintaining his position as a legal assistant.  "New York law does not give a prisoner any statutory, regulatory or precedential right to his prison job."  *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) (internal quotation marks and citations omitted).  Nor, for that matter, do inmates have a "constitutional right to any particular position of employment." *Hodges v. Jones*, 873 F. Supp. 737, 745 (N.D.N.Y. 1995).  Thus, Plaintiff had no liberty interest in maintaining his position as legal assistant.

Therefore, we find that Plaintiff has failed to allege he suffered from an atypical and significant hardship and it is recommended that his due process claims be **dismissed** on that ground.

### D.  Eighth Amendment Claims

Plaintiff alleges that Defendants Drs. Bashvar and Guzman violated his Eighth Amendment rights when they provided him with deficient medical treatment.  To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that (1) prison officials acted

with deliberate indifference to (2) his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

The first prong is an objective standard and considers whether the medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (*Hathaway I*)). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals' daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991); *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d

Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

In this case, Plaintiff alleges that Drs. Bashvar and Guzman prescribed him medications for high blood pressure that reacted harmfully with his previously prescribed pain medication, causing him pain and other ailments.   Am. Compl. at ¶¶ 36-38.   Plaintiff alleges that Drs. Bashvar and Guzman should have first verified "whether or not these medications caused significant interactions with each other to pose a threat to Plaintiff's health and well being."   *Id.* at ¶ 37.

Plaintiff does not allege that Defendants failed to treat a serious medical need, but rather, that the treatment provided caused him pain and other injuries.   Plaintiff appears to allege that the actions of Drs. Bashvar and Guzman were intentional, deliberately indifferent, and negligent all at once. *See id.* at ¶¶ 36 (alleging that the Defendants acted "solely to cause the Plaintiff pain and suffering by using Plaintiff as a guinea pig"), 39 (stating that the medication was prescribed in "an improper, negligent, and careless manner"), & 40 (stating the Defendants were "deliberately indifferent").   For the purpose of deciding the Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claim,[8] the only pertinent question is whether Plaintiff has alleged that the Defendants acted with deliberate indifference to his serious medical needs.

In order to state a valid claim of deliberate indifference, a plaintiff must allege that an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."   *Hathaway I*, 37 F.3d at 66 (citation and internal quotation marks omitted).   Here, although Plaintiff uses the constitutionally significant phrase "deliberately indifferent" to describe that actions of   Bashvar and Guzman, he does not allege that those

---

[8] Plaintiff also brings medical malpractice tort claims under New York law.

Defendants knew that the medications posed an excessive risk to Plaintiff's safety, but rather, that "they failed to properly diagnose, treat, and prescribe [medications] for the condition [from] which the Plaintiff was suffering."   Am. Compl. at ¶ 39.   Allegations of negligent treatment and misdiagnosis do not state a cause of action under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. at 106; *see also Tomarkin v. Ward*, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982) ("[A] claim based solely on a doctor's misdiagnosis or faulty judgment, with no facts to support a charge of deliberate indifference on his part, is not cognizable under § 1983.").

In addition, Plaintiff's conclusory allegation that the Defendants used him "as a guinea pig," Am. Compl. at ¶ 36, does not remedy the dearth of factual allegations necessary to state a viable Eighth Amendment claim.   There is no indication as to why the medical treatment he received was "unauthorized," nor is there any factual allegation supporting the claim that the Defendants were experimenting on Plaintiff in any way; therefore, those claims are conclusory.   Once the brush of conclusory allegations is cleared from the Amended Complaint, the core of Plaintiff's claim is exposed: Drs. Bashvar and Guzman treated him for his medical conditions, but caused him to suffer pain and other ailments due to their negligence in prescribing him medication.   Such acts, even if true, are simply not enough to engage the Eighth Amendment.

For these reasons, it is recommended that Plaintiff's Eighth Amendment claims be **dismissed**.[9]

### III.  Plaintiff's Cross-Motion for Default Judgment

In his Cross-Motion for Default Judgment against Defendants, Plaintiff's principal argument is that by filing a Motion to Dismiss instead of an Answer, Defendants violated the Court's

---

[9] Defendants do not challenge Plaintiff's state-law tort claims.  Because it is recommended that other claims survive this Motion, we will not recommend dismissal of those claims at this juncture.

*-23-*

September 29, 2008 Order directing the Defendants to file "an answer to the Amended Complaint on behalf of the served Defendants **within thirty (30) days** of the filing date of this Order."[10]  Dkt. No. 24, Order at p. 3 (emphasis in original); Dkt. No. 34, Pl.'s Cross-Mot. at p. 4.  Although the September 29, 2008 Order directed the Defendants to "answer" the Amended Complaint, the Federal Rules of Civil Procedure explicitly allow for the filing of a dispositive motion in lieu of an answer.  *See* FED. R. CIV. P. 12(b) ("a party may assert [affirmative defenses] by motion") & 56(b) (defendant party may move for summary judgment "at any time").  In accordance with those rules, it is generally understood that a court's order directing a defendant to respond to a complaint can be complied with through the filing of either an answer or a dispositive motion.

Plaintiff also alleges that various unnamed DOCS employees are tampering with his legal mail.  These allegations fail to state claims against any named Defendant and are therefore conclusory.  Similarly, Plaintiff's Motion to Compel the Defendants to engage in discovery is premature due to Defendants' filing of the present Motion.[11]  Finally, Plaintiff's argument that the Defendants' Motion to Dismiss should be precluded because their attorney, Shoshanah V. Bewlay, Esq., did not submit an affidavit along with the Motion papers is without merit.  The Local Rules of Practice for the Northern District of New York clearly state that an affidavit is not required for motions brought pursuant to FED. R. CIV. P. 12(b)(6).  *See* N.D.N.Y.L.R. 7.1(a)(2).

For the reasons stated above, it is recommended that the Plaintiff's Cross-Motion for Default

---

[10] Plaintiff does not argue that the Defendants' Motion was untimely. In that respect, a review of the Docket Report shows that on October 1, 2008,  Defendants' requested an extension to respond to the Amended Complaint, and the Court granted such request, allowing Defendants until October 28, 2008 to so respond.  Dkt. No. 28, Order.  The Defendants timely filed their Motion to Dismiss on October 10, 2008.  Dkt. No. 31.

[11] In the event these recommendations are adopted, Defendants will be directed to Answer the surviving claims in the Amended Complaint.  Upon the filing of such Answer, the Court will issue a Scheduling Order which will contain, *inter alia*, a deadline for the discovery period.

Judgment be **denied**.

### IV.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion to Dismiss (Dkt. No. 31) be **GRANTED in part** and **DENIED in part** in accordance with the above opinion; and it is further

**RECOMMENDED**, that Plaintiff's Cross-Motion for Default Judgment (Dkt. No. 34) be **DENIED**; and it is further

**RECOMMENDED**, that should our recommendations be accepted, the following claims and Defendants will remain: (1) Plaintiff's retaliation claim against Leghorn; (2) Plaintiff's state law claims; 3) Plaintiff's access to courts claim against Guzman and Maxine Moe #1.  In this regard, should our recommendations be accepted, Plaintiff must take reasonable steps to ascertain the identity of Maxine Moe #1 and file a motion to amend his Amended Complaint to add such individual, by name, as a Defendant to this lawsuit.  The Marshals cannot serve an unidentified individual.  It is Plaintiff's responsibility to ensure proper and timely service on this individual; his failure to do so will result in dismissal of this Defendant; and it is further

**RECOMMENDED,** that in the event the above recommendations are adopted, the Defendants should be directed to file an Answer to the surviving claims; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

<u>**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE**</u>

APPELLATE REVIEW. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   September 17, 2009
        Albany, New York

_____

RANDOLPH E. TREECE
United States Magistrate Judge