**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JOEL ANDERSON,

                                  Plaintiff,

            - v -                                                    Civ. No. 9:07-CV-1184
                                                                              (DNH/RFT)

MICHAEL LEGHORN, *Captain, Eastern NY Corr. Facility*;
DR. GUZMAN, *Eastern NY Corr. Facility*; and
MAXINE MOE #1,

                                  Defendants.[1]


**APPEARANCES:**                                   **OF COUNSEL:**

JOEL ANDERSON
Plaintiff, *Pro se*
03-A-3649
Wyoming Correctional Facility
P.O. Box 501
Attica, New York 14011

HON. ERIC T. SCHNEIDERMAN                          SHOSHANAH V. BEWLAY, ESQ.
Attorney General of the State of New York          Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

                    **REPORT-RECOMMENDATION and ORDER**

        *Pro se* Plaintiff Joel Anderson filed a civil rights action, pursuant to 42 U.S.C. § 1983,

alleging that Defendants violated his constitutional rights while he was housed at Eastern

Correctional Facility.  Within his Amended Complaint, Plaintiff asserted the following constitutional

---

[1] At Plaintiff's request, Defendant William D. Brown was dismissed from this action on November 21, 2008.
Dkt. No. 33 & Oral Order, dated Nov. 21, 2008.  Furthermore, on October 1, 2009, the Honorable David N. Hurd, United
States District Judge, adopted this Court's recommendations in full and dismissed Defendants LaPolt, Brown, and
Bashvar from this action.  Dkt. No. 37.  The caption above reflects only the remaining Defendants.

claims: (1) retaliation in violation of the First Amendment; (2) conspiracy to retaliate; (3) denial of access to the courts; (4) due process violations stemming from a Disciplinary Hearing; and (5) deliberate indifference to his health in violation of the Eighth Amendment.  Dkt. No. 25, Am. Compl. at p. 2.  Plaintiff also brought state tort claims of medical malpractice and intentional infliction of emotional distress.  *Id.*

On October 10, 2008, Defendants filed a Motion to Dismiss the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b), which Plaintiff opposed.  Dkt. Nos. 31 & 34.[2]  On September 17, 2009, this Court issued a Report-Recommendation and Order, wherein we recommended that the District Judge grant Defendants' Motion in part and deny it in part; we further recommended that Plaintiff's Cross-Motion for Default be denied.  Dkt. No. 36.  Those recommendations were adopted in full by the Honorable David N. Hurd, United States District Judge.  Dkt. No. 37.  Accordingly, the surviving claims are as follows: (1) Plaintiff's retaliation claim against Defendant Michael Leghorn; (2) Plaintiff's access to courts claim against Defendants Mikhail Gusman and Maxine Moe #1;[3] and 3) Plaintiff's state law claims.  *Id.*

On May 18, 2010, the remaining Defendants filed a Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56.  Dkt. No. 42.  A response to that Motion was due on or before June 4, 2010.  By September 22, 2010, the Court had not received any response from Plaintiff.  In fact, there had been no communication from Plaintiff during that entire elapse of time.  In light of

---

[2] Plaintiff also filed a Cross-Motion for Default Judgment.  Dkt. No. 34.

[3] In recommending that Plaintiff's claims against the unidentified Defendant proceed, this Court directed Plaintiff to take "reasonable steps to ascertain her identity" and that the action would be dismissed against her if she was not properly served.  Dkt. No. 36 at pp. 17-18.  To date, Plaintiff has not identified this Defendant, nor effected service on her.  Having provided Plaintiff with proper notice, dismissal without prejudice would be warranted under Federal Rule of Civil Procedure 4(m).  However, as discussed herein, because Plaintiff's claim against this unidentified Defendant lacks merit, we recommend dismissal with prejudice.  *See infra* Part I.B.

his *pro se* status, the Court *sua sponte* extended Plaintiff's response deadline and further warned of consequences that could befall him should he fail to respond.  Dkt. No. 43.  On November 15, 2010, Plaintiff submitted to the Court a written notification of a change in his address.  Dkt. No. 44.  No mention was made of Defendants' Motion.  To date, no response has been filed on Plaintiff's behalf, nor has any mailing been returned to this Court as undeliverable.  Having provided Plaintiff ample opportunity to respond and ample warning of the consequences of his failure to do so, we address Defendants' Motion on their papers alone.  For the reasons explained below, we recommend **granting** Defendants' Motion and **dismissing** this entire action.

## I.  DISCUSSION

### A.  Standard of Review

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *accord F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir. 1994).  The moving party has the burden of demonstrating that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).  "When a motion for summary judgment is made and supported . . . an adverse party may not rest upon the mere allegations or denials of the . . . pleading, but the adverse party's response, by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56(e)], must set forth specific facts showing that there is a genuine issue for trial."  *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000) (quoting FED. R. CIV. P. 56(e)).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment[.]" *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994) (alteration and emphasis in original) (citation omitted). However, it is well settled that on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999).

Furthermore, in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U .S. 519, 520-21 (1972); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (a court is to read a *pro se* party's "supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest"). Indeed, the Second Circuit has stated that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995). This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment. *Showers v. Eastmond*, 2001 WL 527484, at *2 (S.D.N.Y. May 16, 2001).

Local Rule 7.1(a)(3) requires the non-movant to file a Statement of Material Facts that mirrors the movant's statement in matching numbered paragraphs and that sets forth a specific reference to the record where the material fact is alleged to arise. N.D.N.Y.L.R. 7.1(a)(3). More specifically, this Local Rule provides that "[t]he Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id*. (emphasis in original). Courts of the Northern District have adhered to a strict application of Local Rule

7.1(a)(3)'s requirement on summary judgment motions.  *Giguere v. Racicot*, 2002 WL 368534, at

*2 (N.D.N.Y. Mar. 1, 2002) (citing, *inter alia*, *Bundy Am. Corp. v. K-Z Rental Leasing, Inc.*, 2001

WL 237218, at *1 (N.D.N.Y. Mar. 9, 2001)).

Furthermore, this Circuit adheres to the view that nothing in Rule 56 imposes an obligation

on the court to conduct a search and independent review of the record to find proof of a factual

dispute.  *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002).  As long as the

local rules impose a requirement that parties provide specific record citations in support of their

statement of material facts, the court may grant summary judgment on that basis.  *Id*. at 470-71.

### B.  Access to Courts

Plaintiff asserts that Defendants Mikhail Gusman, M.D., and Maxine Moe #1 violated his

constitutionally protected right to access the courts by destroying Plaintiff's medical records after

this civil lawsuit had commenced "in order to obstruct the proper litigation of the instant lawsuit,

and/or otherwise thwart the future investigations that would be conducted by the Attorney General's

Office as a result of this action having been filed."  Am. Compl. at ¶ 45.

It is well established that "prisoners have a constitutional right to access to the courts."

*Bounds v. Smith*, 430 U.S. 817, 821 (1977).  To establish standing for a claim for denial of right of

access to courts, an inmate must show that he has suffered an actual injury traceable to the

challenged conduct of prison officials – that is, that a "nonfrivolous legal claim had been frustrated

or was being impeded" due to the actions of prison officials.  *Lewis v. Casey*, 518 U.S. 343, 353

(1996); *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 498 (N.D.N.Y. 2009).

During the dates and times relevant to the Complaint, Defendant Dr. Mikhail Gusman served

as the Health Services Director at Eastern.[4]  Dkt. No. 42-3 [hereinafter "Defs.' 7.1 Statement"] at

¶ 30.  In support of his request for summary judgment, Dr. Gusman provided the Court with a

Declaration avowing he did not destroy Plaintiff's medical records.  Dkt. No. 42-4, Mikhail Gusman,

M.D., Decl., dated May 18, 2010.  As evidentiary support, Dr. Gusman attaches the very records

Plaintiff asserts had been destroyed.  *Id.*, Ex. A.  These statements and evidence have not been

refuted by Plaintiff, thus we take them to be true.  Furthermore, we note that substantively, Plaintiff

has failed to identify the contours of his alleged injury.  His Eighth Amendment claims have already

been dismissed from this lawsuit and we are unaware of any other legal claim he may have to

support his assertion that he was denied access to the courts.  Accordingly, we recommend dismissal

of this claim against Defendant Gusman.  Since an identical claim was lodged against Defendant

Maxine Moe #1, whom Plaintiff has yet to identify and serve, we similarly recommend dismissal.[5]

## C. Retaliation

As noted above, Plaintiff asserts that Defendant Leghorn retaliated against him.  The

following recitation of facts are derived from Defendants' Statement of Material Facts, which we

take as true.

During the dates and times relevant to the Amended Complaint, Defendant Michael Leghorn

worked as a captain at Eastern.[6]  Defs.' 7.1 Statement at ¶¶ 1-2 & 5.  As captain, Defendant Leghorn

was charged with the duty to conduct rounds at Eastern.  *Id.* at ¶ 5.  Captain Leghorn had been

---

[4] Dr. Gusman currently holds this same position at Eastern.  Defs.' 7.1 Statement at ¶ 30.

[5] Plaintiff has been admonished on multiple occasions of his responsibility to identify this Defendant and effect proper service.  Dkt. No. 24 at p. 3; Dkt. No. 36 at pp. 17-18; Dkt. No. 37 at p. 3.  As the claims set forth against this unidentified Defendant lack merit, there is no need for the Court to examine the efforts Plaintiff made to effect timely service on this individual.

[6] Defendant Leghorn is currently retired from the Department of Correctional Services (DOCS).  Defs.' 7.1 Statement at ¶ 1.

informed by confidential sources that Plaintiff had been providing unauthorized legal assistance in the facility law library in exchange for compensation, *i.e.*, cigarettes, candy, etc.  *Id*. at ¶ 6.  On the morning of August 7, 2007, while conducting rounds in the law library, Captain Leghorn observed Plaintiff working on the computer terminal typing legal work for Inmate L. Ruiz.  *Id*. at ¶ 7.  When he questioned Plaintiff about the work he was conducting, Plaintiff closed and deleted the material from the computer screen and hard drive.  *Id*. at ¶ 8.  Perceiving this behavior as suspicious, Defendant Leghorn confiscated Plaintiff's paperwork and legal material involving Inmate Ruiz, along with Plaintiff's computer disc.  *Id*. at ¶ 9.  Plaintiff's disc contained legal work for Inmate D. Clarke.  *Id*. at ¶ 10.  At that point, Officer Petko[7] conducted a pat frisk of Plaintiff, who surrendered an envelope of papers from his pants pocket.  *Id*. at ¶ 11.  After reviewing those papers, Captain Leghorn confiscated additional legal and/or "inmate documentation" for Inmates A. Cruz and D. Perez.  *Id*. at ¶ 12.  After conducting further investigation, Captain Leghorn confirmed that Plaintiff did not have approval to assist or possess such legal work and/or to give legal assistance to Inmates Ruiz, Clarke, Cruz, and Perez.  *Id*. at ¶ 13.  A search of Plaintiff's cell revealed additional legal work for numerous other inmates with overdue and/or outdated authorization forms for inmates who were no longer housed at Eastern.  *Id*. at ¶ 14.  Captain Leghorn obtained additional confidential information supporting the fact that Plaintiff was approaching, seeking, and soliciting other inmates in order to provide unauthorized legal assistance in exchange for compensation.  *Id*. at ¶ 15.

When it was confirmed that Plaintiff did not have authorization to assist certain inmates with legal work, Captain Leghorn prepared an inmate misbehavior report, charging Plaintiff with violating various prison rules, including the rule prohibiting unauthorized legal assistance and

---

[7] Officer Petko is not named as a Defendant in this lawsuit.

possession of contraband; subsequently, at conclusion of a disciplinary hearing, Plaintiff was found guilty of violating these rules.[8]  *Id*. at ¶¶ 16-17; Dkt. No. 42-6, Michael Leghorn, Decl., dated May 18, 2010, Ex. A.

In his Amended Complaint, Plaintiff asserts that Defendant Leghorn filed that misbehavior report against him in retaliation for his role in helping a fellow inmate bring a civil rights lawsuit against several correctional officials, including Defendant Leghorn.  Am. Compl. at ¶¶ 13 & 20-21; *see also Andino v. Spitzer, et al.*, Civ. No. 9:06-CV-509 (FJS/DEP) (N.D.N.Y.).[9]

In order to state a valid retaliation claim, a plaintiff must allege that his actions were protected by the Constitution and that such "conduct was a substantial or motivating factor for the adverse actions taken by prison officials."  *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citations omitted).  Thus, there must be a "causal connection between the protected speech and the adverse action."  *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citation omitted).

In our previous decision, upon a full legal analysis, we determined that Plaintiff exercised his  protected First Amendment right when he provided legal assistance to fellow inmates, presuming that he did so within the contours of prison regulations.  *See* Dkt. No. 36 at pp. 11-14 (noting that while this First Amendment right is not entitled to special protection and therefore may be regulated, for retaliation purposes, it constitutes an exercise of a First Amendment right).  And there is little doubt that a misbehavior report would constitute an "adverse action."  *Davis v. Goord*,

---

[8] Plaintiff was exonerated of two other charges contained in the misbehavior report.  Dkt. No. 42-6, Michael Leghorn Decl., dated May 18, 2010, Ex. B.

[9] Plaintiff further indicates that he and Andino intended the lawsuit to be a class-action, but "for reasons not pertinent to this complaint [Plaintiff] did not enter the action and was awaiting teleconferencing from the Court in [] order to give evidence in that case."  Am. Compl. at ¶ 13.  Thus, Plaintiff was not a party to Andino's lawsuit, but he alleges to have assisted Andino in drafting his complaint and was prepared to offer evidence in support of Andino's claims.

320 F.3d 346, 353 (2d Cir. 2003) ("Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation.") (citation omitted).  Thus, we must examine whether the exercise of this protected right was a "substantial or motivating factor" for the misbehavior report authored by Leghorn.  Factors relevant to this consideration include:  (1) temporal proximity between the protected activity and the alleged retaliatory act; (2) plaintiff's prior good disciplinary record; (3) plaintiff's vindication at his disciplinary hearing; and (4) defendants' statements regarding their motive for the discipline.  *See Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995).

In support of his request for summary judgment, Defendant Leghorn submits a Declaration, wherein he avers that he was served with process in the *Andino* matter on March 13, 2007, almost five months prior to the incident with Plaintiff in the law library.  Leghorn Decl. at ¶ 20.  That lawsuit charged Leghorn with violating Inmate Andino's due process rights during a disciplinary hearing that Leghorn presided over.  *Id*. at ¶ 20.  Leghorn declares he has no recollection of ever being aware that Plaintiff had any connection with that case.  *Id*. at ¶ 21.  Ultimately, Plaintiff was found guilty at the disciplinary hearing of possessing contraband and providing unauthorized legal assistance.  *Id*., Ex. B.  And, Plaintiff admits that he "did not have authorization to posses" the confiscated legal documents that belonged to other inmates, though, he denies providing those inmates with any type of legal assistance.  Am. Compl. at ¶ 19.

In our estimation, based on the above, Plaintiff has not established that his participation in the *Andino* matter was a substantial or motivating factor to Defendant Leghorn's issuance of the misbehavior report.  Even if the Court were to presume that Plaintiff's legal aid to other inmates on the whole, and not one specific inmate, served as the basis for the alleged retaliation, such claim still

fails.  In situations where a defendant's actions are the result of both retaliatory and legitimate reasons, the burden shifts to the defendant to show that he would have taken the same action absent the retaliatory motive.  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citing, *inter alia*, *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)).  Defendant Leghorn avers that he had a legitimate disciplinary reason for issuing the misbehavior report: Plaintiff's overt violation of prison rules, which Plaintiff admits.  Leghorn Decl. at ¶ 28; Am. Compl. at ¶ 19.  Accordingly, Plaintiff's retaliation claim cannot survive summary judgment.

### D.  State Claims

Plaintiff alleges state law claims for medical malpractice and intentional infliction of emotional distress.  Since we recommend that the federal claims be **dismissed** from this action, we also recommend **dismissal** of the pendent state law claims pursuant to 28 U.S.C. § 1367, which authorizes a federal court to decline to exercise supplemental jurisdiction over a state claim if all of the claims over which the court had original jurisdiction were dismissed.  28 U.S.C. § 1367(c)(3).

### II.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion for Summary Judgment (Dkt. No. 42) be **GRANTED** and this case be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL</u>**

**PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. §

636(b)(1); Fed. r. Civ. P. 72, 6(a), & 6(e).


Date:   January 24, 2011
        Albany, New York


_____
RANDOLPH F. TREECE
United States Magistrate Judge

*-11-*